ADAM H. SPRINGEL, ESQ., NBN 7187
**SPRINGEL & FINK LLP**
2475 Village View Drive, Suite 250
Henderson, Nevada 89074
Telephone:  (702) 804-0706
Facsimile:  (702) 804-0798
Email:  aspringel@springelfink.com

SHAWN KHORRAMI, SBN 180411
ROBERT J. DREXLER, SBN 119199
BEVIN E. ALLEN, SBN 221936
**KHORRAMI, LLP**
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071
Telephone:     (213) 596-6000
Facsimile:     (213) 569-6010
(Admitted pro hac vice)

*Attorneys for Defendants*
Scott J. Ferrell, Michael Campos
Thomas Hess, Sara Jordan

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| METABOLIC RESEARCH, INC., a Nevada Corporation, <br><br> Plaintiff, <br> vs. <br><br> SCOTT J. FERRELL, MICHAEL CAMPOS, THOMAS HESS, SARA JORDAN, DOES I-V, inclusive, DOE ENTITIES VI-X, inclusive, <br><br> Defendants. | Case No.: 09-cv-02453-JCM-PAL <br><br> **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO *FED. R. CIV. PROC*. 12(c)** <br><br> Complaint Filed:  November 16, 2009 |

i

**TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA:**

**PLEASE TAKE NOTICE** that defendants SCOTT J. FERRELL (erroneously sued as Scott J. Farrell), MICHAEL CAMPOS, THOMAS HESS, and SARA JORDAN (collectivey "Defendants") hereby move this Court for judgment in its favor on the pleadings. Defendants move for judgment on the entire complaint, as well as on each of the six causes of action contained in the complaint: (1) Racketeering; (2) Racketeering Conspiracy; (3) Civil Extortion; (4) Tortious Interference With Contracts and Prospective Economic Relations; and (5) Declaratory Relief (6) Punitive damages.  This Motion is made on the ground that Metabolic Research Inc.'s Complaint, and each of the six causes of action contained therein, do not state facts sufficient to constitute a cause of action against Defendants.

The Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the pleadings and records on file herein, and upon such other oral and documentary evidence as may be presented to the court at the hearing on this motion.

Dated:  September 7, 2012                          **KHORRAMI, LLP**

By: _____/s/ Bevin E. Allen, Esq._
        Bevin E. Allen, Esq.
        KHORRAMI, LLP
        444 S. Flower St., Thirty-Third Floor
        Los Angeles, California 90071
        Phone: (213) 596-6000; Fax:  (213) 569-6010

        ADAM H. SPRINGEL, ESQ., NBN 7187
        SPRINGEL & FINK LLP
        2475 Village View Drive, Suite 250
        Henderson, Nevada 89074
        Phone:  (702) 804-0706; Fax:  (702) 804-0798

        *Attorneys for Defendants*
        Scott J. Ferrell, Michael Campos,
        Thomas Hess and Sara Jordan

## I.    BACKGROUND AND INTRODUCTION

Plaintiff Metabolic Research, Inc. (hereinafter "Plaintiff" or "Metabolic"), brought this lawsuit against attorney Scott J. Ferrell, and his clients Michael Campos, Thomas Hess, and Sara Jordan (hereinafter "Defendants"), alleging numerous state-law tort claims predicated directly upon Defendants' service of a prelitigation demand letter, which itself is mandated by the Consumer Legal Remedies Act ("CLRA") as a prerequisite to litigation.  (Cal. Civ. Code § 1750, *et seq*.)  Plaintiffs' complaint attempts to distort Defendants' demand letter as a form of extortion and racketeering under Nevada's anti-racketeering statutes, *Nev. Rev. Stat.* §§ 207.350 – 207.520 ("Nevada RICO").

Additionally, Plaintiff alleges that Defendants engaged in conspiracy, tortious interference with contracts and prospective economic relations with Metabolic's distributor, General Nutrition Centers, Inc. ("GNC").  Plaintiff bases these allegations on nothing more than the mandatory CLRA letter Defendant Ferrell sent to Metabolic and their gross misinterpretation thereof.

Defendants then filed a special motion to dismiss based upon Nevada's anti-strategic lawsuit against public participation ("SLAPP") statute, *Nev. Rev. Stat. § 41.660*.  The U.S. District Court for the District of Nevada denied the motion.  Defendants appealed and the appeal was dismissed for lack of jurisdiction based upon the fact that an order denying a motion to dismiss is not immediately appealable under Nevada's anti-Slapp statute.

Defendants Farrell, Campos, Hess, and Jordan now bring this motion for judgment on the pleadings as to Claims One through Six of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(b)(6).  As shown below, the allegations made by the Plaintiff do not and

1

cannot state a claim for a Nevada RICO action.

**A.      Defendants' Conduct Leading Up to Service of the CLRA Notice**

Defendants Campos, Hess and Jordan each purchased Plaintiff Metabolic's product "Stemulite" based on specific promotional representations made by Metabolic that Stemulite would enhance deep REM sleep, increase muscle gain and endurance, increase weight loss and fat loss, increase wellness and energy, and promote a sense of overall wellbeing. *See Exhibit "1" to Metabolic's Complaint, the CLRA letter issued to Plaintiff Metabolic by Defendant Ferrell on behalf of Defendants Campos, Hess and Jordan.* Thereafter, Defendants Campos, Hess and Jordan consulted with Defendant Ferrell, a California attorney, for the purposes of bringing a proposed class action based on the false and misleading nature of Metabolic's promotional representations.

Metabolic's challenged advertising was brought well within the CLRA's Section 1770(a)(5), which makes it unlawful to "[r]epresent[] that goods or services have … uses, benefits, or quantities which they do not have …" [*Cal. Civ. Code § 1770(a)(5)*],  and Section 1770(a)(7), which makes it unlawful to "[r]epresent[] that goods or services are of a particular standard, quality, or grade …" *See Cal. Civ. Code § 1770(a)(7).*

**B.      Defendants' CLRA Notice**

Pursuant to the express terms of the CLRA, Defendant Ferrell prepared and served a demand letter [*Exhibit 1 to Metabolic's Complaint*] (hereinafter referred to as the "CLRA Letter"), which is a prerequisite to filing a lawsuit under the CLRA. This requirement is mandated by *California Civil Code* § 1782(a), which proscribes the following:

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this Title, the consumer shall do the following:

2

> (1) notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by section 1770 of the particular alleged violations of section 1770.
>
> (2) demand that the person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation of section 1770.

*See Cal. Civ. Code § 1782(a).*

The statutory Notice requirements, which "may concern an individual grievance or a grievance that affects a class of consumers"[1], expressly provide that a class action may be avoided by the recipient only where corrective action is taken as to the class as a whole and the recipient ceases engaging in the subject business practice:

> (c) No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exist:
>
> (1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.
>
> (2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.
>
> (3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.
>
> (4) The person has ceased from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, the person will, within a reasonable time, cease to engage, in the methods, act, or practices.

*See Cal. Civ. Code § 1782(c).*

Importantly, exhaustion of the CLRA notice requirement is mandatory. Where a party

---

[1] Matthew Bender, California Forms of Pleading and Practice--Annotated § 504.13(7) (citing Kagan v. Gibraltar Sav. & Loan Assn., 35 Cal. 3d 582, 591 (1984), disapproved on other grounds, Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 643 (2009)).

3

files a claim for damages without following the notice requirement, the "claim must … be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *See Morgan v. AT&T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 1261 (2009).

Defendants' CLRA Letter complied with these requirements by (1) notifying Metabolic of "the particular alleged violations of section 1770" [*Exhibit "1" to Metabolic's Complaint*, at p. 2-3], and (2) advising that Defendants would file a class action lawsuit unless the specific corrective action proscribed by Section 1782(c) was undertaken as to the class as a whole. *See id.*, at p. 3-4. This notwithstanding, however, the CLRA Letter contained an express offer to compromise that advised that "[i]f Defendants agree[d] to a stipulated injunction that includes an appropriate labeling disclaimer within thirty days from the date of this letter, [Defendants would] … take no further action in this matter …" *See id.*, at p. 4.

Thus, the CLRA Letter confirms that Defendants were willing to drop the matter entirely were Metabolic willing to simply agree to discontinue the promotional activity that gave rise to the alleged violations of the CLRA.

C.    **Allegations of Plaintiff's Complaint**

Rather than addressing the CLRA Letter on the merits, Metabolic filed this lawsuit alleging the following claims against attorney Ferrell and each of his clients: (1) Racketeering; (2) Racketeering conspiracy; (3) Civil Extortion; (4) Tortious Interference With Contracts and Prospective Economic Relations; (6[2]) Declaratory Relief; and (7) Punitive damages. *See Metabolic Complaint*, at ¶32-73.

_____

[2] Although Plaintiff's Complaint names the Declaratory Relief and Punitive Damages claims as the sixth and seventh causes of action, respectively, the complaint skips a fifth cause of action. As such, there are 6 causes of action alleged in Plaintiff's Complaint.

Each of Plaintiff Metabolic's six (6) causes of action are predicated directly upon the prelitigation demand letter, sent by attorney Ferrell on behalf of his clients, as was required pursuant to the statutory mandate of the CLRA.  While Plaintiff Metabolic's complaint makes repeated references to Defendants' CLRA Letter as constituting "extortion," this inflammatory characterization is conclusively negated by the fact that (1) the CLRA letter nowhere threatens a crime, but rather, only provides notice of the alleged violation of the CLRA as mandated by California Civil Code § 1782 [*Exhibit "1" to Metabolic's Complaint*], and (2) the act of sending of a CLRA notice was an activity not only sanctioned, but **mandated**, by the State of California as a prerequisite which consumers must satisfy to avail themselves access to the court.  *See Cal. Civ. Code § 1782*; *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1261 (2009).[3]

Plaintiff's Complaint is also defective for another reason – it admits on its face that Defendants' CLRA Letter only contained allegations of "fraudulent misrepresentations" (which formed the basis of the alleged CLRA violations), and that it was Metabolic itself that independently drew the conclusion that such allegations, if true, would amount to a crime having been committed:

> Plaintiff Metabolic research was shocked and stunned at the extortion letters since it alleged that Stemulite was being sold via the internet through fraudulent misrepresentations **which, if true,** constituted federal mail fraud (18 U.S.C. Section 1341) and federal mail fraud [sic](18 U.S.C. Section 1343).

*See Metabolic Complaint¸* at ¶27.  Thus, as the Complaint itself admits on its face that the only

---

[3] The Ninth Circuit has proclaimed that "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance."  *See Crockett & Myers v. Napier*, 583 F.3d 1232, 1237 (9th Cir., 2009).  In *Crockett* , the court relied on California authority regarding the scope of the litigation privilege – the very defense which Defendants assert in this action.

5

crime alleged was created by Metabolic's erroneous interpretation of the implication of the CLRA letter, each of Metabolic's claims, which are themselves predicated on this manufactured claim of extortion, lack any arguable basis.

Plaintiff has not provided any meaningful factual allegations to explain how Defendants could be liable under the asserted claims.  Instead, Plaintiff bases the six causes of action in the complaint on the single act of Defendants' CLRA Letter.  Plaintiff fails, however, to show how this letter meets the requirements of a predicate act under Nevada RICO and fails to plead any injury sustained by the delivery of the CLRA Letter.  Additionally, the prelitigation demand letter is a requirement to bring suit under the CLRA; such compliance with a statutory mandate cannot constitute a tort.

**D.    Standard of Review**

A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the pleadings are closed, but within such time as so not to delay trial. Fed. R. Civ. P. 12(c).  The standard applied to decide a Rule 12(c) motion is the same as the standard used in a Rule 12(b)(6) motion to dismiss for failure to state a claim.  Judgment on the pleadings is appropriate when, even if all material facts in the pleadings are accepted as true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d. 1542, 1550 (9th Cir. 1989).

In determining a motion to dismiss or motion for judgment on the pleadings, the Court generally considers only the complaint. *Hal Roach Studios, Inc., supra*, at 1555 n. 19.  However, the Court may consider matters that are properly the subject of judicial notice. *Mullis v. United States Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987).

6

Further, Fed. R. Civ. P. 10(c) provides that a copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes. Materials properly attached to the complaint as exhibits pursuant to Fed. R. Civ. P. 10(c) may be properly considered in determining whether a claim has been stated. *Hal Roach Sudios, Inc., supra*, at 1555 n. 19 (as amended). When a written instrument or subject of judicial notice contradicts allegations in a complaint to which it is attached, the Court need not accept the allegations of the complaint as true. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Additionally, where a complaint refers to a document in whole or in part, the document is central to plaintiff's claim, and no party questions the authenticity of the copy attached to the motion made pursuant to 12(b)(6), the Court may properly consider the document in its entirety. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).

In the instant case, Plaintiff alleges six causes of action against Defendant based on one prelitigation demand letter.

## DISCUSSION

### A. Plaintiff's Complaint is Precluded Under the Litigation Privilege, in its Entirety

As held by the Ninth Circuit, "Nevada recognizes 'the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged….'" *See Crockett & Myers v. Napier*, 583 F.3d 1232, 1236 (9th Cir., 2009) (quoting *Fink v. Oshins*, 118 Nev. 428, 434 (2002)). However, "[t]he privilege applies not only to communications made during actual judicial proceedings, but also to 'communications **preliminary to a proposed judicial proceeding**.'" *See Crockett*, 583 F.3d at 1236 (quoting

7

*Fink*, 118 Nev. at 434) (emphasis added).

Defendants' prelitigation demand letter at issue here is a paradigm example of a "communication[] preliminary to a proposed judicial proceeding[,]" and Plaintiff lacks any basis to claim the contrary.   Indeed, "Nevada courts have indicated that the scope of the privilege is 'quite broad' and that it should be applied 'liberally.'"  *See Crockett*, 583 F.3d at 1237.  Based on this directive, "a court determining whether the privilege applies should resolve **any doubt** in favor of a broad application."  *See Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (2009) (emphasis added).

Even if there were a question as to applicability, the Ninth Circuit permits this Court to look to California law for guidance.  *See Crockett*, 583 F.3d at 1237 ("[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance.").  California courts have long held that the litigation privilege attaches to prelitigation demand letters such as that at issue in the instant case.  *See e.g. Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 35 (1997) ("The classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled.");[4] *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 169 (1999) ("[t]he privilege has been broadly construed to apply to demand letters and prelitigation communications by an attorney.");  *Lerette v. Dean Witter Organization, Inc.*, 60 Cal. App. 3d 573, 578 (1976) ("we hold that a demand letter such as that sent by Dubow is fully privileged

---

[4] While the Court in *Edwards* ultimately concluded the privilege did not apply in that case, it did so based on facts that are not present here.  See *Edwards v. Centex Real Estate Corp*., 53 Cal. App. 4th 15, 38 (1997) (finding the litigation privilege inapplicable because "the record shows that appellants never suggested litigating their claims, threatened lawsuits, or even made any settlement demands on Centex, Hillebrandt, Travelers or any other defendant such as would justify respondents in a good faith apprehension that appellants in fact proposed resorting to the courts to resolve their dispute.").

8

under section 47 as preliminary to a judicial proceeding").

In addition, the Nevada Supreme Court has concluded that "the absolute privilege applies to **both** attorneys and parties to litigation" [*Clark*, 213 P.3d 496, 502 (2009) (emphasis added)], a fact also acknowledged by the Ninth Circuit. *See Crockett*, 583 F.3d at 1237 (citing *Clark*). Moreover, to avoid any confusion, the Ninth Circuit has also concluded that "the privilege applies to **any** action except one for malicious prosecution[.]" *See Crockett*, 583 F.3d at 1237 (emphasis added).

### B.  Plaintiff's First Claim for Racketeering Fails to State a Claim Against Defendants

To properly plead a Nevada RICO cause of action, "[a] state RICO complaint need allege … *at least two 'not isolated'* predicate acts 'that have the same or similar pattern, intents, results, accomplices, victims or methods of commission.'" *Siragusa v. Brown*, 971 P.2d 801, 811 (Nev. 1998), *see also*, NRS § 207.390 (defining racketeering activity) (emphasis added).  At least one of the crimes related to racketeering must have occurred after July 1, 1983, and the latest incident must have occurred within five years after a prior commission of a crime related to racketeering.[5] NRS § 270.390.  Further, the plaintiff must also allege that he was "injured in his business or property by reason of any violation of NRS 207.400."  NRS § 207.470.

In addition, a plaintiff asserting a Nevada RICO claim must meet a higher pleading standard than that imposed on an ordinary plaintiff.  Due to the quasi-criminal nature of the civil RICO cause of action and the need to be able to distinguish between well-founded and frivolous claims to prevent "overenthusiastic" use of RICO, the federal courts, as well as the Nevada Supreme Court, have demanded specificity in pleading the racketeering acts in a civil RICO cause of

---

[5] "Crime[s] related to racketeering" are also referred to as "predicate acts."

action.  *Hale v. Burkhardt*, *supra*, 104 Nev. at 637-38.

"A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently 'plain, concise and definite' statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges." *Id.* at 638, 764 P.2d at 869-70; *cf.* NRS § 173.075(1); *Shapley v. State*, 93 Nev. 184 (1977).  In other words, a RICO plaintiff must plead the time, place, and manner of commission of the RICO predicate acts as well as the role of each defendant.  *Hale v. Burkhard, supra,* 104 Nev. at 638.  Here, a RICO suit against Defendants is not sustainable because the Plaintiff has not and cannot properly plead the elements as required under Nevada RICO.

### 1.    Plaintiff failed to allege two 'not isolated' predicate acts

Plaintiff incorrectly alleges that each mailing of Defendants' prelitigation demand letter constituted a separate 'not isolated' predicate act when in fact the letters were part of the same transaction.

In *Reva Int'l, Inc. v. MBraun, Inc.*, 2007 U.S. Dist. LEXIS 94821 (D. Nev. Dec. 27, 2007), the plaintiff alleged that the purchase, sale and installation of a glove box system constituted three separate acts in violation of the RICO act.  This Court, however, disagreed and determined that these acts were part of a single transaction.  *Id.*  In making its decision, this Court relied on defendant's invoice that included the purchase price and installation price of the product.  *Id*.

Similarly, here, Plaintiff alleges that Defendants engaged in three separate racketeering acts of extortion by mailing a prelitigation CLRA Letter to Metabolic Research and two copies

10

of the letter to GNC.  *See Metabolic Complaint* ¶40.  The identical CLRA Letters [*Exhibit "1" to Metabolic's Complaint*] were mailed in connection to possible CLRA violations by Metabolic Research.  Each mailing, however, does not constitute a separate 'not isolated' act for the purposes of a RICO claim.

In the instant case, the events are much simpler than even that of *Reva Int'l*.  Defendants sent the same letter regarding the same matter to the appropriate parties.  Such action cannot constitute multiple 'not isolated' acts and instead are part of the same transaction.  Thus, Plaintiff cannot plead the elements to a RICO claim.

2. <u>Plaintiff failed to properly plead the "racketeering activity" element of the Nevada RICO statue.</u>

To properly plead the "racketeering activity" requirement under Nevada RICO, the alleged predicate acts committed by the defendants must be among the crimes enumerated in NRS § 207.360; otherwise the plaintiff has failed to state a claim.  *See, e.g., Allum v. Valley Bank of Nevada*, 849 P.2d 297 (Nev. 1993) (wrongful termination is not a predicate Nevada RICO act; therefore, the plaintiff had no standing to sue).  Under federal RICO, the alleged predicate act must be "indictable."  *Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986); *see* 18 U.S.C. § 1961(1).  Nevada state law does not address this issue, but because Nevada RICO is generally patterned after federal RICO, it follows that any predicate acts for Nevada RICO must be also indictable.[6]  Metabolic's claims must fail because it has not

---

[6] Although Nevada RICO is patterned after federal RICO, there are some differences in the statutes.  *Hale*, 764 P.2d at 867, 868.  For instance, Nevada RICO does not require the same "pattern/continuity" element required by federal RICO.  *Siragusa v. Brown*, 971 P.2d 801, 811 (Nev. 1998).  However, when interpreting Nevada RICO, it is only logical that a predicate act must be one that must be indictable.  The Nevada statute states that a "crime related to racketeering" means "the commission of, attempt to commit or conspiracy to commit any of the

11

alleged the pertinent conduct required to establish that any of the enumerated felonies in NRS § 207.360 were committed and therefore, in turn, indictable.

In the Complaint, Metabolic has alleged that Defendants engaged in the predicate act of extortion. *See Metabolic Complaint* at ¶18-20; NRS § 207.360(10).  Section 205.320 of the Nevada Revised Statutes states that an offense of extortion occurs where:

> A person who, with the intent to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intended to affect any cause of action or defense, or any property, or to influence the action of any public officer, or to do or abet or procure any illegal or wrongful act, whether or not the purpose is accomplished, threatens directly or indirectly:
>
>   1.  To accuse any person of a crime;
>
>   2.  To injure a person or property;
>
>   3.  To publish or connive at publishing any libel;
>
>   4.  To expose or impute to any person any deformity or disgrace; or
>
>   5.  To expose any secret…

Accordingly, Plaintiff must be able to show that Defendants first had the "intent to extort or gain any money or property" from Plaintiff and secondly, that Defendants threatened to do so "directly or indirectly" by one of the enumerated ways.

An essential ingredient of the crime of blackmail as defined by the statute is the intent to extort or gain money or property, or to accomplish any of the other things mentioned, by any of the means enumerated therein. The intent to do so is the gist of the offense.  *Ex parte Esden*, 55

---

[enumerated predicate acts]."  NRS § 207.360.  If a civil plaintiff must show the commission, attempt, or conspiracy to commit the enumerated predicate acts, he must allege and demonstrate how the defendant has met the elements of each of the predicate acts.  If a defendant's actions meet each of the elements of the predicate acts, it follows that his alleged crimes would be indictable.

Nev. 169, 171 (Nev. 1934).  Defendants' CLRA Letter makes no attempt to extort or gain money from Plaintiff.  Instead, the Letter serves to notify Plaintiff of possible violations to the CLRA and to offer several solutions to accommodate Defendants Campos, Hess and Jordan as well as a class of similarly situated persons.  More importantly, Defendants offered a compromise in which no money or property was involved.  The offer to compromise states:

> If [Metabolic] agree[s] to a stipulated injunction that includes an appropriate labeling disclaimer within thirty days from the date of this letter, we will agree to take no further action in this matter nor make any further claim for relief unrelated to the terms of the stipulated injunction. *Exhibit "1" to Metabolic's Complaint*

It is clear that Defendants had no intent to gain money or property from Plaintiff as demonstrated by their willingness to drop the matter entirely is Metabolic simply agreed to discontinue the promotional activity that gave rise to the alleged violations of the CLRA.

Nevada's extortion statute requires that a threat be "[t]o injure person or property." Plaintiff alleges that the Defendants attempted to coerce Metabolic into disgorging of "all its historical revenues from the sale of Stemulite" within thirty days of the letter or defendants would "put the Company out of business."  *See Metabolic Complaint* at ¶7-16.  Plaintiff, however, fails to explain the manner in which Defendants would accomplish this lofty goal.  It is assumed that Plaintiff refers to the possibility of litigation regarding the CLRA claims and any costs related to such litigation.  The threat of litigation, however, does not constitute a predicate act of extortion upon which a RICO claim can be based:

> Plaintiff alleges in his Complaint that Defendants (1) threatened frivolous and costly litigation against it; (2) threatened to withhold partnership distributions; and (3) threatened to improperly freeze-out Plaintiffs from participation in Phase III of the Forum Shops.
>
> **The Court finds that Plaintiff has failed to plead sufficient facts to state a claim under RICO for extortion. Even accepting Plaintiff's allegation that**

13

**Defendants threatened frivolous legal action against Plaintiff as true, the Court finds that a threat of suit generally does not constitute a predicate act of extortion upon which to stake a RICO claim.** *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988); *American Nursing Care of Toledo v. Leisure*, 609 F. Supp. 419, 430 (N.D. Ohio 1984) (stating that the threat of litigation is not a predicate act for RICO purposes).

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.* (D. Nev. 2006) 460 F. Supp. 2d 1246, 1256 (emphasis added).

Sending a prelitigation demand letter is not only a lawful and common method of resolving legal issues, it is also a prerequisite to litigation for matters involving the CLRA, such as the possible false advertising related to Stemulite.  It cannot be said that Defendants extorted Plaintiff into complying with their demands because there was no threat made.

Therefore, because the alleged actions of the Defendants cannot be characterized as a predicate act, the Nevada RICO allegations against Defendants should be dismissed with prejudice as they fail to state a claim upon which relief can be granted.  *Hale, supra*, 764 P.2d at 870; NRS § 173.075.

3. <u>Plaintiff has no standing to bring suit under RICO because it lacks the requisite injury to business or property</u>

Nevada law states that a person "who is injured in his business or property by reason of any violation of NRS 207.400 has a cause of action …."  NRS § 207.470.  Therefore, in order to have standing to bring a Nevada RICO action, the plaintiff must allege an injury in his business or property.

Like its federal counterpart, Nevada RICO only allows for recovery for injury to business or property; there is no such provision for recovery from personal injuries.  When interpreting injury and causation in the context of a Nevada RICO suit, the Nevada state courts have adopted

14

the same analysis as is used in federal RICO.  *Allum, supra*, 849 P.2d at 301, fn. 5; *Siragusa, supra,* 971 P.2d at 811, fn. 15.

RICO also requires a very stringent causal connection:  "To maintain a claim under RICO, a plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the proximate cause as well."  *Forsyth v. Humana, Inc.* 114 F.3d 1467, 1487 (9th Cir. 1997); *see also Allum, supra*, 847 P.2d at 300.  A showing of proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," because

> [f]irst, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiffs' damages attributable to the violation, as distinct from other, independent, factors.  Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 269-70 (1992) (internal citations omitted) (explaining why RICO requires not just "but for" factual causation, but legal proximate causation as well).

Therefore, any expenses that would have been incurred, regardless of the alleged RICO activity, cannot be said to be factually or proximately caused by the RICO activity.  *Strates Shows, Inc. v. Amusements of Am., Inc.* 379 F.Supp.2d 817, 832 (E.D.N.C. 2005) (explaining that though RICO activity may have led to non-selection of contract proposals, the costs in preparing these proposals were not proximately caused by RICO activity "[g]iven that such costs would not have been incurred either with or without the defendants' illegal acts, plaintiff cannot show that

15

defendants' illegal conduct was even a "cause-in-fact" of plaintiff's costs in preparing the … proposals").

Metabolic alleges damages to its business in an amount to be proved at trial. However, Metabolic fails to state what these "actual damages" consist of and what causal connection they have to its racketeering claims. Plaintiff gives nothing more than sheer speculation that a result of the CLRA Letter would be that GNC "*might* pull Stemulite off of its shelves…thereby squeezing off Plaintiff Metabolic Resources' income stream." *See Metabolic Complaint* at ¶60 (emphasis added). But even this is insufficient because it lacks specificity. "Proof of causation for purposes of a civil Racketeer Influenced and Corrupt Organizations Act claim must be such as to suggest probability rather than mere possibility, precisely to guard against raw speculation by the factfinder." *Strates Shows v. Amusements of Am.*, 379 F.Supp.2d 817, 826 (E.D.N.C. 2005).

Plaintiff has failed to properly allege a single injury to its business or property due to a RICO violation and therefore has no standing to assert a RICO claim.

C. **Plaintiff's Second Claim for Racketeering Conspiracy Fails to State a Claim Against Defendants**

In the Complaint, Plaintiff alleges that Defendants conspired to extort Plaintiff for financial gain by engaging in the preparation and mailing of the CLRA letters to Metabolic and GNC. *See Metabolic Complaint* at ¶48. Civil conspiracy consists of "two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results." *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1997). Defendants' actions were not unlawful but instead were proscribed by the CLRA as a prerequisite to litigation. In *Carlton v. Manuel*, 187 P.2d 558 (1947), the Supreme Court of

16

Nevada recognized the principle that what one may lawfully do, many may do in combination. "That ruling would lead one to conclude that an alleged conspiracy is not actionable unless the combination results in the perpetration of an unlawful act, or some injurious act by unlawful means." *Eikelberger v. Tolotti*, 96 Nev. 525, 527 (Nev. 1980)  Therefore, because Plaintiff is unable allege any unlawful act against Defendants or state any damages, the claim for conspiracy must also fail.

D. **Plaintiff's Third Claim for Tortious Interference With Contracts Fails to State a Claim Against Defendants**

The gravamen of Plaintiff's causes of action for tortious interference with contract and interference with prospective economic advantage is that Defendants provided GNC with a CLRA letter. *See Metabolic Complaint,* ¶59.  As discussed herein, Plaintiff fails to plead sufficient facts to state a cause of action for tortious interference with contract or intentional interference with prospective economic advantage.

Plaintiff's claim for tortious interference with contract fails as a matter of law because Plaintiff's Complaint does not include sufficient factual allegations supporting a claim that Defendants intended to disrupt the contractual relationship between Metabolic and GNC, or a claim that there was actual disruption of the contract and resulting damage.

In order to establish a claim for intentional interference with contractual relations, a plaintiff must establish the following elements by a preponderance of the evidence:

1. A valid and existing contract;

2. The defendant's knowledge of the contract;

3. Intentional acts intended or designed to disrupt the contractual relationship;

4. Actual disruption of the contract; and

17

5. Resulting damage.

*J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (Nev. 2003).

Because interference with contracts is an intentional tort, the plaintiff must show that the defendant intended to disrupt the contractual relationship; something that Metabolic cannot accomplish.  In its Complaint, Metabolic states that it was foreseeable to Defendants that GNC might pull Stemulite off its shelves.  *See Metabolic Complaint* at ¶60.  This statement is insufficient to support this claim because Plaintiff does not inquire into the motive or purpose of Defendants as required.  The United States District Court of Nevada, interpreting Nevada law, explained that the plaintiff must establish that the defendant had a motive to induce breach of the contract with the third party:

> The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. *Inquiry into the motive or purpose of the actor is necessary.* The inducement of a breach, therefore, does not always vest third or incidental persons with a tort action against the one who interfered. Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly.

*Nat. Right to Life P.A. Com.,* 741 F. Supp. at 814 (emphasis in original) (quoting *DeVoto v. Pacific Fid. Life Ins. Co.*, 618 F.2d 1340, 1347 (9th Cir. 1980)).

Here, the intent of Defendants was not to disrupt any contractual relationship between Metabolic and GNC.  Instead, Defendants merely attempted to notify Plaintiff of any CLRA violations and to abide by the prelitigation demand letter requirement of the CLRA.  The essential element is the purpose to cause the result.  The actor must have intended not only the alleged act that interfered with any contractual relationship but, more importantly, he must have intended to cause the result itself.  *Ramona Manor Convalescent Hosp. v. Care Enters.*, 225 Cal.

18

Rptr. 120, 124 (Cal. App. 4th Dist. 1986).  "If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other." (Rest., Torts, § 766, com. d).

Furthermore, even if Defendants acted with any knowledge that any interference may ensue, the Restatement Second of Torts states that this alone, without any **intent** to interfere, is also insufficient.  Any resulting consequence from Defendants' intent to notify Plaintiff of CLRA violations is so far removed from Defendants' ultimate objective that it cannot be found to be improper.

> If the actor is not acting criminally nor with fraud or violence or other means wrongful in themselves but is endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper. (Restat 2d of Torts, § 766, com. J; *see also* § 767, especially Comment d).[7]

In addition, Plaintiff fails to state that there was an actual breach of the contract between Metabolic and GNC as required by Nevada law. *See Treasury Solutions Holdings, Inc. v. Upromise, Inc.*, 2010 U.S. Dist. LEXIS 144258 (D. Nev. Dec. 22, 2010).  Plaintiff also fails to make specific factual allegations establishing that Defendants acted to disrupt the contract in any impermissible manner.  Instead, Plaintiff makes vague statements that it was "foreseeable" that GNC "might pull Stemulite off of its shelves…thereby squeezing off Plaintiff Metabolic

---

[7] Factors in Determining Whether Interference Is Improper.  In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:  (a)  the nature of the actor's conduct, (b)  the actor's motive, (c)  the interests of the other with which the actor's conduct interferes, (d)  the interests sought to be advanced by the actor, (e)  the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f)  the proximity or remoteness of the actor's conduct to the interference and (g)  the relations between the parties. *Restat 2d of Torts, §767.*

19

Resources' income stream." *See Metabolic Complaint*, at ¶60. Nowhere in the Complaint does Metabolic allege that its contract with GNC has been breached or in some way disrupted by Defendants' acts. Accordingly, "unless there is a breach of contract, Plaintiff[] cannot prevail on a claim of tortious interference with contractual relations." *Treasury Solutions*, 2010 U.S. Dist. LEXIS 144258.

Defendants' actions were not unlawful or fraudulent and were in fact proscribed by law. Any incidental consequence that may have resulted from the CLRA Letter is unintended by Defendants and cannot be found to be improper.

### E. Plaintiff's Third Claim for Tortious Interference With Prospective Economic Relations Fails to State a Claim Against Defendants

Plaintiff alleges tortious interference with prospective economic relations based on the same factual allegations upon which its claim for tortious interference with contracts rests. However, Plaintiff does not allege specific facts supporting the existence of a prospective business advantage and, therefore, its claim must fail.

Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

Plaintiff fails to allege any elements for tortious interference with prospective economic advantage mainly because it makes no reference to a prospective business relationship with

20

GNC.  Plaintiff may not base its prospective business advantage claim on its existing contract with GNC.  *See Klein v. Freedom Strategic Partners, LLC,* 595 F. Supp. 2d 1152, 1163 (D. Nev. 2009).

Furthermore, Plaintiff does not allege that Defendants intended to prevent such prospective relationship.  As explained above in section C, Plaintiff fails to state any intent by the Defendants to harm Plaintiff by preventing a contractual relationship with GNC.  Because Plaintiff cannot properly pleaded any prospective relationship, intent, or injury caused by the Defendants, its claim for interference with prospective economic relations must fail.

F. **Plaintiffs Have Not Adequately Alleged Any Declaratory Relief Claims Against Defendants**

Metabolic's sixth cause of action is for declaratory relief.  As shown above, Plaintiff's other causes of action fail as a matter of law.  Absent any claims, Plaintiff does not have a basis to seek declaratory relief from the Defendants.

This declaratory relief claim alleges that "[a]n actual controversy exists as to the legal interpretation and construction of the Extortion Letters under the laws of the State of Nevada" and it prays that the court "declare the Extortion Letters to constitute an act or attempted act of extortion under the laws of the state of Nevada."  *See Metabolic Complaint* at ¶65, 67.

However, as noted above, there are no facts alleged to support that defendants could have violated any law.  Accordingly, the claims for declaratory relief all fail.

G. **Plaintiffs Have Not Alleged Sufficient Facts to Show that Punitive Damages Could be Warranted Against Defendants**

Metabolic's seventh cause of action alleges that Defendants' conduct was "outrageous" and "proven by clear and convincing evidence that said defendants have been guilty of

21

oppression, fraud or malice, express or implied."

Punitive damages are a remedy recoverable if the plaintiff can allege and prove facts showing that the defendants acted with oppression, fraud or malice. Nev. Rev. Stat. 42.010. It is not a separate cause of action in and of itself. *See e.g., Sprouse v. Wentz,* 105 Nev. 597 (Nev. 1989); *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598 (Nev. 2000). Plaintiff has no claim for punitive damages because its underlying tort claims of racketeering and extortion fail to state a claim.

Nevertheless, even if any of Plaintiff's claims could survive, Plaintiff cannot produce evidence raising that Defendants acted with conscious disregard of its rights. Nevada sets a high threshold for punitive damages, which Plaintiff cannot meet. NRS 42.005(1) requires clear and convincing evidence of either implied malice or oppression before punitive damages may be recovered.

> A plaintiff may recover punitive damages when evidence demonstrates that the defendant has acted with "malice, express or implied." NRS 42.005(1). "'Malice, express or implied,' means conduct which is intended to injure a person or despicable conduct which is **engaged in with a conscious disregard of the rights or safety of others.**" NRS 42.001(3). A defendant has a "[c]onscious disregard" of a person's rights and safety when he or she knows of "the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1). In other words, under NRS 42.001(1), **to justify punitive damages, the defendant's conduct must have exceeded "mere recklessness or gross negligence**."

*Wyeth v. Rowatt,* 244 P.3d 765, 783 (Nev. 2010) (quoting *Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 742-43 (Nev. 2008)).

As mentioned before, Plaintiff's only factual basis for all six causes of action in its complaint is the CLRA Letter sent to Plaintiff and GNC. Defendants' CLRA Letter nowhere threatens Plaintiff engaged in a crime – let alone the crimes of wire and mail fraud that serve as

22

the predicate of the claims in Plaintiff's lawsuit [*Metabolic Complaint*, at ¶27] – but rather, only provide notice of the alleged violation of the CLRA as mandated by California Civil Code § 1782. *See Ferrell Dec.*, Exh. 2 (CLRA Notice). Second, the demands contained in the CLRA Letter track the statutory requirements set forth in California Civil Code § 1782, subparts (a) and (c). *See Motion*, at 5:3-6:19. Even then, Defendants' CLRA Letter nowhere makes an impermissible monetary demand, but in fact, states that Defendants were willing to drop the matter entirely were Plaintiff willing to simply agree to rectify the promotional activity that gave rise to the alleged violations of the CLRA. *See CLRA Notice*, at p. 4. Finally, Defendants did not threaten to publicly "out" Plaintiff if the prelitigation demands were not met. Rather, consistent with the statutory purpose of a CLRA notice, Defendants stated their intent to file a lawsuit based on the alleged deceptive advertising placed at issue therein. *Id.* at p. 3, 4.

Thus, the only basis on which Plaintiff could allege conduct that exceeded "mere recklessness or gross negligence" and justify punitive damages would be Defendants' act of sending the prelitigation demand itself – which was an exhaustion requirement mandated by statute. *See Motion*, at 6:4-7. Defendants' compliance with a statutory exhaustion mandate cannot constitute improper or illegal conduct, let alone, that Defendants engaged such conduct with a culpable mind.

Additionally, awards of punitive damages are improper where the evidence fails to show either a willful wrong or the damage as an intended or necessary consequence. *See* NRS 42.001(1). Defendants' intent here was to provide notice to Plaintiff of the alleged violation of the CLRA as mandated by California Civil Code § 1782 [*Ferrell Dec.*, Exh. 2] and to abide by the mandated prerequisite which consumers must satisfy to avail themselves access to the court under the CLRA. *See. Cal. Civ. Code § 1782; Morgan*, 177 Cal. App. 4th at 1261. Because Plaintiff is unable to plead facts that Defendants acted with any recklessness or negligence in complying with California law, it certainly cannot establish that Defendants acted with

23

oppression, fraud or malice.  As such, Plaintiff's claim for punitive damages cannot stand.

III.    <b>CONCLUSION</b>

All claims for racketeering, conspiracy, extortion and tortious interference with contracts and prospective economic relations fail as they have not been adequately pled.  Additionally, the Court should strike any allegations or prayers for declaratory and punitive damages and attorney's fees asserted against defendants since no party seeking such remedies against defendants alleges any factual or legal bases for such remedies.

Dated:  September 7, 2012                    **KHORRAMI, LLP**

By: _____/s/ Bevin E. Allen, Esq._
      Bevin E. Allen, Esq.
      KHORRAMI, LLP
      444 S. Flower St., Thirty-Third Floor
      Los Angeles, California 90071
      Phone: (213) 596-6000; Fax:  (213) 569-6010

      ADAM H. SPRINGEL, ESQ., NBN 7187
      SPRINGEL & FINK LLP
      2475 Village View Drive, Suite 250
      Henderson, Nevada 89074
      Phone:  (702) 804-0706; Fax:  (702) 804-0798

      *Attorneys for Defendants*
      Scott J. Ferrell, Michael Campos,
      Thomas Hess and Sara Jordan

24